## JACKSON *et al.* v. McGILBRAY.

No. 4398. Opinion Filed April 27, 1915.

(148 Pac. 703.)

1.    EVIDENCE—Documentary Evidence—Certified Copy of Record—Certificate—Effect. Where a certified copy of the record of a department of the government of the United States is admissible in evidence, the office of the certificate thereto by the official having the custody of the original is to attest the correctness of that part of such record which is exemplified; but such certificate is no part thereof, nor is it evidence of any fact not appearing in the record proper.

2.    PARTIES—"Real Party in Interest"—Ejectment. Plaintiff in a suit in ejectment is not "the real party in interest," as intended by section 4681, Rev. Laws 1910, unless he is a party who may be benefitted or injured by the judgment in the case.

(Syllabus by Bleakmore, C.)

*Error from District Court, Muskogee County;*

*R. P. De Graffenreid, Judge.*

Ejectment by Clarence McGilbray, for the use of Fannie B. Bradley, against E. A. Jackson and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*Geo. S. Ramsey, Edgar A. De Beules,* and *Sol H. Kauffman,* for plaintiffs in error.

*N. A. Gibson,* for defendant in error.

BLEAKMORE, C. This is a suit in ejectment commenced in the district court of Muskogee county on August 15, 1910, by the defendant in error, as plaintiff, against the plaintiffs in error, as defendants. The parties will be referred to hereinafter as they appeared in the trial court.

The petition is as follows:

"The plaintiff states that Fanny B. Bradley, for whose use and benefit he brings this suit, is the owner of the legal and equitable estate and title in that certain tract of land in Muskogee county, Okla., described as the southwest quarter of section fifteen (15), township thirteen (13) north, range fifteen (15) east, containing one hundred and sixty (160) acres more or less, and that she acquired title to said land by virtue of a conveyance of the same to her by this plaintiff and his wife on August 1, 1910, which conveyance was in the form of a warranty deed, and was on August 3, 1910, recorded in the office of the register of deeds of Muskogee county, Okla., in Book 182, at page 351; that the plaintiff was at said time, and still is, a married man, and that the land so conveyed was his homestead; that the defendants wrongfully detain said land from this plaintiff and from said Fanny B. Bradley, to their damage in the sum of one thousand ($1,000.00) dollars.

"The premises considered, plaintiff prays for judgment for the possession of said described land in favor of the said Fanny B. Bradley, and against the defendants above named, and for one thousand ($1,000.00) dollars, as damages for the wrongful detention thereof, and for the costs of this cause, and all proper relief."

The defendants answered:

"First. That they deny each and every, all and singular,

the material allegations and averments contained in plaintiff's petition filed herein.

"Second. That they deny that said Clarence McGilbray and Fanny B. Bradley, or either of them, have any right, title, or interest in or to the property set out and described in the petition filed herein."

The case was tried to a jury. It was stipulated by the parties: The land in controversy was allotted to the plaintiff, Clarence McGilbray, the grantor from whom Fanny B. Bradley claims title; that said land is in the Creek Nation; that the said Clarence McGilbray is enrolled as a freedman citizen in the Creek Nation; and also that at the time of the institution of this suit the defendants were in possession of this land.

Plaintiff introduced in evidence a portion of the Creek freedman roll ,to wit:

"Department of the Interior, Commissioner to the Five Civilized Tribe. Creek Freedman Roll. No. 852; name, McGilbray, Clarence; age (age nine) 9; sex, M.; census card No. 239" —accompanied by the following certificate:

"This is to certify that I am the officer having custody of the approved roll of Creek freedmen, and that the above and foregoing is a true and correct copy of that portion of said roll appearing at No. 852 enrolled as of August 1, 1898, P. O. Lee, Oklahoma.

"J. G. Wright,

"Commissioner to the Five Civilized Tribes.

"By S. C. Pitts, Clerk.

"M. P. S., Clerk.

"Muskogee, Oklahoma, April 15, 1909."

Indorsed:

"Plaintiff's Exhibit A."
—and a warranty deed to the land in question, of date August 1, 1910, executed by plaintiff and his wife to Fanny B. Bradley.

Defendants introduced a deed to the same land executed by plaintiff to defendant Jackson, of date July 1, 1910. This was all the evidence.

The court found that plaintiff was a minor, incapable of conveying said land on July 1, 1910, when the deed to Jackson was made, and that he had arrived at his majority, as shown by the evidence, on August 1, 1910, the date of the deed to Fanny B. Bradley, and rendered judgment for plaintiff against defendants for the use and benefit of said Fanny B. Bradley, for the possession of the lands involved, and $80 damages.

Defendants assign as error, and urge here: (1) The action of the court in holding that the portion of the records of the Commissioner to the Five Civilized Tribes constitutes any evidence of the age of plaintiff, and in rendering judgment thereon; and (2) in holding that the plaintiff was a proper party and entitled to maintain this action.

1. That, as to transactions involving allotted lands of members of the Five Civilized Tribes concluded after the act of Congress approved May 27, 1908, became effective, "the enrollment records of the Commissioner to the Five Civilized Tribes" are conclusive evidence of the age of all members and freedmen, is no longer an open question in this jurisdiction.

A careful reading of the clear and comprehensive opinion of this court by Mr. Chief Justice Kane, in *Scott v. Brakel,* 43 Okla. 655, 143 Pac. 510, will leave no one in doubt as to what constitutes such enrollment records. The following language used therein applies with peculiar force to the case at bar.

"These rolls, are prepared and submitted to and approved by the Secretary of the Interior, contained no computation of the age of any member of the tribes at any given date and the calculation of ages, as shown on the published rolls, is not uniform throughout the publication. No date is given for the calculation of the ages of Cherokee freedmen, and in the Creek Nation the public is warned against accepting the rolls as an evidence of age, as both the final roll of Creeks by blood and of Creek freedmen bear the notation: 'Ages shown on this roll are the ages shown on date of enrollment. To calculate present age of allottees, it will be necessary to secure a certified copy of census card showing date of enrollment.' All of this and many other deduc-

tions deducible from the same sources, pointing the same way, inevitably lead to the conclusion that Congress intended 'the enrollment records of the Commissioners to the Five Civilized Tribes' to include and embrace all of the testimony and exhibits tending to establish age that were in evidence before the Dawes Commission, and the conclusions of the Commission based thereon, from the date of the application for enrollment of any particular individual up to the time of the ascertainment by the Commission as to whether the name of such person was to be included upon the final roll of the nation in which he claimed citizenship.

"It is true that in many instances the census card consists of an entry of a summary of the evidence of the applicant at the time the application was made, whilst in other instances, where the testimony of the applicant was not taken down by a stenographer and subsequently transcribed, the entries consisted of the epitomized statements of the witnesses reduced to census card form. In such cases the census card is of necessity the enrollment record, and, where the Commissioner to the Five Civilized Tribes certifies that the census card constitutes the entire enrollment record as to the person whose name appears thereon, that will be sufficient. There are many instances where the census card constitutes substantially the complete enrollment record. In such cases it is admissible as conclusive evidence as to age, not as a census card, but as 'the enrollment record,' when so certified by the proper officer. In this part of the opinion all the Justices concur.

The only portion of the enrollment record introduced in evidence is:

"Department of the Interior. Commissioner to the Five Civilized Tribes (M. P. S.). Creek Freedmen Roll. No. 852; name, McGilbray, Clarence; age (age nine) 9; sex, M.; census card No. 239."

No date appears in this record itself showing when it was compiled. The age of the allottee, Clarence McGilbray, is unquestionably shown therein to be nine years at some time not stated. When was he nine years old? When did he reach his majority? These dates it is impossible to determine from the record itself. The court evidently, and necessarily, resorted to, and relied upon, the certificate of the custodian of such records

in making its findings, and arrived at the conclusion that the allottee was a minor on July 1, 1910, but was of full legal age one month later.

The copy of the portion of the enrollment records offered in evidence is incomplete, and, independently of the certificate of the official in charge thereof, is insufficient to prove age. The office of the certificate is to attest the correctness of that part of the record which is exemplified, and is evidence thereof; but it is no part of such record, nor is it evidence of any fact not appearing in the record proper. As evidence of the fact that it was made in August, 1898, or that the allottee named therein was enrolled as of August, 1898, it was incompetent and without probative force or effect.

In Wigmore on Evidence, sec. 1678, it is stated:

"The authority to certify a copy signifies that the terms set forth by the officer as representing the original in his custody must be a literal copy, not merely the substance or the effect, or the original's terms. An authority to copy can in its nature mean no less than this:

"1833, Morton, J., in *Oakes v. Hill*, 14 Pick. [Mass.] 448: 'Clerks of religious and other corporations, and other recording officers, may make and verify copies of their records, and in so doing act under the obligation of their oath of office. Of the verity of such copies their certificates are evidence. But it is no part of their duty to certify facts, nor can their certificates be received as evidence of such facts.'

"1850, Metcalf, J., in *Greene v. Durfee*, 6 Cush. (Mass.) 362, 363: 'As a general rule an official certificate of what is contained in a record, deed, or other instrument is not admissible in evidence, any further than it is made so by statute.'

"1872, Wells, J., in *Wayland v. Ware*, 109 Mass. 251: 'The certificate * * * that it so "appears from the records of this office" was improperly admitted. To prove a fact of record by a record not produced requires a duly authenticated copy of the record itself or of so much thereof as relates to the fact in question.'

"1885, Ruger, C. J., in *Wood v. Knapp,* 100 N. Y. 114, 2. N. E. 634: 'The officer has power to certify to the correctness of official papers, * * * but beyond that his certificate has no more effect than the opinion of any other person.'"

In 3 Jones on Evidence, sec. 543, appears the following:

"He is not clothed with authority to determine what the record or document relates or pertains to, or to pass judgment upon it in any way. The authorities are unanimous upon this point. Clerks and other recording officers may make and verify copies of their records; and in doing so they act under the obligation of their oath of office. Their certificate may be evidence of the correctness of such copies, but it is no part of their duty to certify to other facts than that the copy is correct. * * * Many illustrations might be given of the rule that the certificate of a public officer * * * is not competent evidence of facts in issue. Unless the certificate accompanies a copy of the record, it has no probative force."

It is laid down in 17 Cyc. 337:

"To prove a fact of record without the production of the record itself, a duly authenticated copy of the record, or so much thereof, as relates to the fact in question, is required. A certificate by a public officer having the lawful custody of public records as to any fact appearing on the records of his office or as to any conclusion he may draw from an inspection of the records is not competent evidence, unless made so by statute."

II. Defendants contend that plaintiff is not a proper party to this action, for the reason that he has no interest in the subject-matter or the result, and that Fanny B. Bradley, for whose use it is alleged the suit is brought, is not shown to be a minor, an incompetent, or in any way unqualified to maintain the suit in her own name, and no fiduciary relationship appears to exist between her and plaintiff. But plaintiff insists that he is the real party in interest, and entitled to maintain the action for the use of the grantee in his deed of August 1, 1910, for the reason that, such deed being champertous, and therefore void as to defendants, but good as between himself and such grantee, he is

bound under his covenants of warranty therein to recover possession of the land conveyed for her benefit.

It is provided by statute (R. L. 1910, sec. 4681):

"Every action must be prosecuted in the name of the real party in interest. * * *"

The real party in interest is the party who is to be benefited or injured by the judgment in the case. *Stewart v. Price,* 64 Kan. 191, 67 Pac. 553, 64 L. R. A. 581; Bliss on Code Pleadings, sec. 45; *Kinsella v. Sharp,* 47 Neb. 664, 66 N. W. 634; *Lampkin v. M. & O. R. Co.,* 146 Ky. 514, 142 S. W. 1037; *Hoagland v. Van Etten,* 22 Neb. 681, 35 N. W. 869, affirmed on rehearing in 23 Neb. 462, 36 N. W. 755; *Simpson v. Miller,* 7 Cal. App. 248, 94 Pac. 252; *Swift v. Ellsworth,* 10 Ind. 205, 71 Am. Dec. 316; *Bostwick v. Bryant,* 113 Ind. 448, 459, 16 N. E. 378, 383; *Grimes v. Cannell,* 23 Neb. 187, 36 N. W. 479.

In Pomeroy's Code Rem. sec. 76, it is stated:

"It is no longer, consistently with the provisions of the Codes, possible for one person to sue 'to the use of' another, as was common in some states. The parties beneficially interested must themselves bring the action." *Brady v. Chandler,* 31 Mo. 28; *Weise v. Gerner,* 42 Mo. 527; *Van Doren v. Relfe,* 20 Mo. 455; *Lytle v. Lytle,* 2 Metc. (Ky.) 127, 128; *State v. Johnson,* 52 Ind. 197; *Shane v. Francis,* 30 Ind. 92; *Hollister v. Hubbard,* 11 S. D. 461, 78 N. W. 949; *Guernsey v. Tuthill,* 12 S. D. 584, 82 N. W. 190; *Frye v. Bank of Illinois,* 10 Ill. (5 Gilman) 332.

As to whether the deed offered in evidence from plaintiff to Fanny B. Bradley was executed at a time and under circumstances which render it champertous and void as to defendants does not appear, and cannot be determined from the stipulations of the parties or the evidence, and is not even suggested by the pleadings.

In determining questions here, we are confined to a review of the case as made in the court below; and it is not our province to enlarge upon the record before us in order to pass upon a

hypothetical phase of a case presented by the briefs. Whether in this state the grantor in a champertous deed may properly maintain an action to recover the land conveyed thereby, for the use of his grantee, is a question not involved in the case now before us, and we therefore refrain from considering it. Suffice it to say that it does not appear anywhere in the pleadings, or from the evidence that the plaintiff, Clarance McGilbray, is the real party in interest, or can be in any way injured or benefited by the result of the action.

It follows that the judgment of the trial court should be reversed, and the case remanded.

By the Court: It is so ordered.