## HUTCHISON v. BROWN.

No. 7790—Opinion Filed Oct. 24, 1916.

Rehearing Denied Sept. 25, 1917. 2nd

Petition for Rehearing Denied

Nov. 10, 1917.

(167 Pac. 624.)

### 1. Ejectment—Presumption and Burden of Proof—Validity of Deed.

In a suit in ejectment and to quiet title, where the plaintiff introduces in evidence a duly acknowledged general warranty deed, legal in its terms and valid upon its face, from the owner of the record title to the land in controversy, purporting on its face to convey to such plaintiff the title to such lands, such deed is prima facie evidence of title, and the burden of proving the in-

validity of such deed by reason of the minority of its Indian grantor is upon the defendant asserting such invalidity.

### 2. Indians—Enrollment Records—Evidence.

While the enrollment records of the office of the Commissioner to the Five Civilized Tribes are conclusive evidence of the facts shown by such records as to the age of a Creek Indian allottee, such records are not conclusive as to matters not shown thereby.

### 3. Appeal and Error—Record—Showing Presentation of Questions to Trial Court.

On appeal to this court, an assignment of error will not be considered by this court when it is not clearly shown by the record that the proposition involved was presented to the trial court, or that the trial court had the opportunity to pass upon the question before its final action in the cause.

### 4. Same.

The record and agreed statement of facts examined, and held that it is not clearly shown that the issue of champerty was presented to, or considered or tried by, the lower court.

### 5. Champerty and Maintenance—Pleading and Agreed Statement of Facts.

An agreed statement of facts, which merely states that, at the time of the execution of a deed which is attacked as being champertous, another person had been in possession of the land which is attempted to be conveyed by the deed, for a period of eight days, and had paid some taxes on the land, and which does not show that such possession was adverse to the grantor in the deed, and which does not purport to show that the grantor or those by whom he claimed had not been in possession of the land, or the reversion and remainder thereof, or had not taken the rents and profits thereof for the space of a year before the date of such deed, does not tend to establish that such deed is void on account of champerty.

### 6. Taxation—Tax Deed—Validity — Indian Homestead—Limitations.

Where, under the laws and treaties of the United States, an Indian homestead is exempt from taxation by a state and its subdivisions, a levy and assessment of taxes thereon, a sale of such lands for taxes, and a tax sale certificate issued in pursuance of such sale, are absolute nullities; and the issuance and recording of a tax deed, based upon such void proceedings, does not set in operation the short statute of limitations against an action to recover such land from a holder under such deed or to avoid such deed.

### 7. Same—Inclusion of Nonexempt Land—Validity of Deed—Limitations.

Where such an exempt homestead is included in a tax deed, which also purports to convey land not exempt, and the purported conveyance of the two separate tracts is based upon separate levies, assessments, sales, and sale certificates, and the consideration is divisible, and all of the proceedings, including the deed, are had in accordance with the laws of the state, the deed is not void as to the non-exempt land, and the short statutes of limitations runs against such deed, after its recordation, as to the nonexempt land.

### 8. Taxation—Tax Title—Limitations.

Where the record owner of all of the rights under a valid tax deed is not brought into a suit until after the expiration of the period of the short statute of limitations, the bringing of the suit against other persons, who have no interest in the land, does not toll the statute as to such record owner.

### 9. Dismissal and Nonsuit—Judgment—Voluntary Dismissal — Discretion of Court —Res Adjudicata.

After a trial court sustains a demurrer to the evidence of the plaintiff, it is within the discretion of such court to set aside the order sustaining the demurrer and allow the cause to be dismissed by plaintiff without prejudice. Record examined, and held that a certain order, allowing such a dismissal without prejudice, after a demurrer had been sustained to the evidence, is in effect a setting aside of the order sustaining the demurrer, and that such order sustaining demurrer is not res adjudicata in a subsequent suit between the same parties on the same subject-matter.

(Syllabus by Johnson, C.)

Error from District Court, Okfuskee County; Geo. C. Crump, Judge.

Suit for ejectment and to quiet title by George Brown against R. G. Davenport, J. R. Morton, and Frank P. Hutchison, in which defendant Davenport filed a disclaimer, and defendant Hutchison filed an answer and cross-petition. Judgment for plaintiff establishing the disclaimer, finding defendant Morton in default, and against defendant Hutchison, and he brings error. Affirmed in part and reversed and remanded in part.

Frank P. Hutchison, pro se.

Vernor & Vernor, for defendant in error.

Opinion by JOHNSON, C. This action involves 60 acres of the allotment of David Drew, a freedman citizen of the Creek Nation of Indians. Forty acres of the land was the homestead allotment, and the other 20 acres was a part of the surplus allotment. The enrollment records in the office of the commission to the Five Civilized Tribes showed that the allottee was enrolled in August, 1898, as being seven years of age at the time of enrollment, without disclosing

the exact birthday. The two tracts of land were assessed for taxes for the year 1909, by the assessing, officers of Okfuskee county, where the land was situated, being assessed in separate parcels, and was placed upon the tax rolls of the county for taxing purposes for that year. Thereafter, on account of nonpayment of the taxes, the county treasurer of Okfuskee county offered for sale said respective tracts for the taxes, penalties, and costs. There being no bidders at the sale, the land was bid off by the treasurer in the name of the county, and tax sale certificates were issued; and subsequently these certificates were purchased by, and assigned by the county to, one R. G. Davenport. Upon August 1, 1912, the allottee executed his warranty deed, purporting to convey the 60 acres of land to one Frank S. Miller, this deed having been duly filed for record on August 2, 1912.

Upon August 2, 1912, upon presentation and demand by the said Davenport, the holder thereof, of the tax sale certificates, the said county treasurer executed and issued to the said Davenport his tax deed covering said lands, which deed was filed of record in the office of the register of deeds of said county upon September 9, 1912. Upon October 29, 1912, the said Davenport, the grantee in the tax deed, for a valuable consideration, purported to convey all of his right, title, and interest in the land to Frank P. Hutchison, the deed evidencing such conveyance having been filed for record on November 7, 1912. On November 6, 1917, the said Frank S. Miller, grantee of the allottee, for a valuable consideration, by quitclaim deed, conveyed to George Brown all of his right, title, and interest in the land, this deed having been filed of record upon November 1, 1912.

Upon April 3, 1913, the said George Brown filed in the district court of Okfuskee county a suit against the said R. G. Davenport and one J. R. Morton, alleging that he (Brown) was the owner of the legal and equitable interest in said land; that the tax deed, as to the homestead 40 acres, was void; and praying for the right to redeem as to the 20 acres of surplus land, and that the said R. G. Davenport and J. R. Morton be declared to have no further interest in the land. The evidence does not disclose what interest Morton was supposed to have had in the land. Originally, Hutchison was not made a party to the above-mentioned suit; but on February 17, 1914, the said district court entered an order permitting the said plaintiff therein to make the said Frank P. Hutchison a party defendant, and

summons in said action was served on the said Hutchison on that date. On May 29, 1913, during the pendency of the suit mentioned in this paragraph, the said Frank P. Hutchison, for a valuable consideration, procured a quitclaim deed to said lands from the allottee. this deed having been filed of record on February 28; 1914. Upon October 16, 1914, the above-mentioned suit was disposed of by the said district court, as shown by an order of said court, which reads as follows, to wit:

"1259. George Brown, Plaintiff, v. R. G. Davenport et al., Defendants. Dismissed. Now, on this the 16th day of October, 1914, the same being an adjourned day of the regular October, 1914, term of. the district court, the above-entitled cause came on to be heard, and the plaintiff appearing by his attorneys of record, Vernor and Vernor, and the defendant appearing by their attorneys of record, J. C. Wright and Frank P. Hutchison, and the court being fully advised in the premises, sustains the demurrer of the defendant Frank P. Hutchison to the evidence of the plaintiff's witnesses, to which the plaintiff excepts; plaintiff dismisses said cause without prejudice."

Upon October 20, 1914, four days after the dismissal of the above-mentioned suit, the cause, from the judgment in which this appeal was prosecuted, was filed in the said district court by the said George Brown, as plaintiff, against the same defendants. R. G. Davenport, J. R. Morton, and Frank P. Hutchison, and concerning the same subject-matter as that in the above-mentioned cause, which was dismissed as above stated. In the last-mentioned suit, which will be designated as this action, Frank P. Hutchison, filed his answer and cross-petition on November 29, 1914. Davenport filed a disclaimer. The defendant Morton did not appear in the cause. The petition sought the remedy of ejectment and quieting title.

Defendant Hutchison attached to and made a part of his answer and cross-petition the pleadings in the former cause, and alleged that the order disposing of that cause, hereinabove set forth, was a final adjudication of the rights of the parties res adjudicata in this cause. His answer contained a general denial of the allegations of the petition; and further set up the tax sale proceedings and deed hereinabove mentioned, as well as his deed from the allottee of date of May 29, 1914, alleging that the allottee was a minor at the time of the deed from the allottee to Miller, that the last-mentioned deed for this reason was void, and that he was the owner of the title to the land by virtue of the tax deed and his deed from the allottee. He further

pleaded that he was not made a party to the first suit by Brown until February 17, 1914, which was more than one year after the recording of the tax deed, and after he had gone into the possession of the land, and that this action was barred by statute of limitation of one year. By his cross-petition this defendant asked that his title be quieted against the claims of plaintiff.

On May 4, 1915, the cause was tried to the lower court, without the intervention of a jury, upon an agreed statement of facts. This agreed statement of facts stated the facts as hereinabove set forth, and showed that the said Davenport had paid the taxes on said land for the years 1910 and 1911 and a part of 1912, and that the defendant Hutchison had paid the taxes thereon for a part of the year 1912 and for the years 1913 and 1914. It contained a tender by the plaintiff of all taxes, penalties, and costs legally chargeable against said land, to redeem the same from the tax sale and deed, and further contained the following clause, viz:

"It is further agreed that said defendant Frank P. Hutchison had been in possession of said land since the date of the purported conveyance from R. G. Davenport to the said Frank P. Hutchison, to wit, 29th day of October, 1912."

Judgment was entered for plaintiff, establishing the disclaimer of Davenport, finding Morton in default, and adjudging that he had no title to the lands, and granting the relief prayed for against Hutchison. From this judgment Hutchison has appealed to this court. The rights of Davenport and Morton, so far as this appeal is concerned, were finally disposed of in the lower court, and such rights seem to be such that they are not necessary parties here.

There are numerous assignments of error, which are presented by the brief of plaintiff in error in several propositions, which will be discussed in order.

It is first contended by plaintiff in error that, this being an action in ejectment, plaintiff should have recovered only upon the strength of his own title; that the burden was upon the plaintiff to show a valid title; that this burden was not sustained by plaintiff for the reason that the title relied upon by plaintiff was derived through the deed of the allottee, executed on August 1, 1912, to Miller; that the enrollment record of the allottee showed that he was "enrolled as seven years of age, August, 1898," which failed to establish that the allottee had reached his majority upon August 1, 1912; and that thus plaintiff failed to establish that on August 1, 1912, the allottee had the power to make the Miller deed, thus failing in proof that the deed was not in violation of the federal restriction and void. Under the law, as interpreted by this court, this position is not tenable.

Under our law of procedure, when the party, having the burden of proving title, introduces in evidence a duly acknowledged general warranty deed, legal in terms and valid upon its face, by the terms of which the owner of the record title purports to convey to such party the title in fee simple in land in controversy, such deed is prima facie evidence of title, the burden of attack upon such deed being in the other party. And where a party pleads infancy as ground of attack upon a deed regular upon its face, the burden of proving infancy rests upon the aggressor. Freeman v. First Nat. Bank of Boynton, 44 Okla. 146, 143 Pac. 1165; Rice v. Ruble, 39 Okla. 51, 134 Pac. 49.

When the deed from the allottee to Miller was proven, it then devolved upon the defendant to prove his contention of infancy of the allottee. This burden was recognized by the pleadings. Is this burden sustained by the proof that the allottee was enrolled as 7 years of age, in August, 1898, the enrollment records being conclusive evidence of the age and not showing the exact birthday, there being no other proof tending to identify such birthday? We think not. The enrollment records showed, and were conclusive evidence, that the allottee was 21 years of age during the month of August, 1912; but they did not show, and were not conclusive evidence, that he was not 21 years old on August 1, 1912. Plaintiff in error himself in his brief contends this to be the law, and cites a part of the following cases to sustain the contention: Heffner v. Harmon, 60 Okla. 153, 159 Pac. 650; Gilcrease v. McCullough et al., 63 Okla. 124, 162 Pac. 178; McDaniel v. Holland, 230 Fed. 945, 145 C. C. A. 139.

Plaintiff in error is correct in his interpretation of this law, but misapplies it in his denial of the burden of proof. We must hold to the doctrine already announced by this court, that the burden of establishing the infancy is upon the party asserting it; that the burden here was on defendant and not on plaintiff; and that there is no error in the assignments covered by this proposition.

Plaintiff in error next contends that the lower court erred in rendering judgment for plaintiff, for the reason that, as contended by plaintiff in error, the deed under

which plaintiff claimed was champertous and void. It does not appear that this proposition was urged in the lower court.

Champerty, as a' matter of defense or otherwise, was not mentioned in the pleadings. It might be contended that the issue in the ejectment feature of the cause was raised on the general denial; and yet there is nothing in the record of the trial proceeding to show that the trial court was required to, or had the opportunity to, pass upon this question at the trial. A motion for a new trial was filed, which averred that the court erred in its finding of law that the deed from Frank S. Miller to George S. Brown was not champertous and void as against the defendant Hutchison, in adverse possession of the lands. It might be contended that the question was thus presented to the trial court. In the first place, the case was tried upon an agreed statement of facts, and a motion for a new trial was not necessary. Board of County Com'rs of Garfield County v. Porter, 19 Okla. 173, 92 Pac. 152; Garland v. Union Trust Co., 49 Okla. 654, 154 Pac. 676. Even if the motion for a new trial had been proper, the objection could not be raised for the first time in the motion for a new trial. The law binds a party to present his case at the trial, and holds him in default in any particular in which he fails to do so. Kaufman v. Boismier et al., 25 Okla. 252, 105 Pac. 326. In the next place, there is nothing in the record, or in the journal entry of the trial and judgment, showing that the trial court found that the deed was not champertous or that the trial court in any way passed upon the question. The only evidence in the case was the agreed statement of facts, and there was nothing in this statement showing clearly that this issue was before the court at the trial.

The only thing in the agreed statement of facts, or elsewhere in the record, prior to the motion for a new trial, which tends to show that this issue might possibly have been presented to the trial court, is the following clause in the agreed statement of facts, to wit:

"It is further agreed that said defendant Frank P. Hutchison has been in possession of said land since the date of the purported conveyance from R. G. Davenport to the said Frank P. Hutchison, to wit, 29th day of October, 1912."

This clause was properly in the agreed statement for the purpose of two other issues, which were raised by the pleadings, viz., the issue of possession in the ejectment action, and the issue of the statute of limitations on the tax deed. It may or may not have been presented on this issue of champerty. To assume that it was would be a presumption of error in the lower court, and this court does not indulge in presumptions of error. Error must always be affirmatively shown by the record, or it will be presumed that no prejudicial error was committed. Linson v. Spaulding, 23 Okla. 254, 108 Pac. 747.

The effect of champerty in a deed lies only between the grantee and the person in possession, and may be waived by the latter. It cannot be presented for the first time on appeal. Baker v. Marcum, 22 Okla. 21, 97 Pac. 572

However, should it be assumed that the champerty question was presented to the trial court by this clause in the agreed statement of facts, the facts therein stated were not sufficient upon which to predicate champerty. The agreed statement shows that Hutchison had been in possession only eight days before the date of the deed from Miller and Brown, and that his deed from Davenport was not of record at that time. It does not show that such possession was adverse to Brown, nor that Brown or those by whom he claimed had not been in possession of the land, or the reversion and remainder thereof, or had not taken the rents and profits thereof for the space of a year before the date of such deed. In the absence of such showings, the proof does not establish champerty, and such absence tends further to show that this clause was not injected for the purpose of establishing champerty, and that this proposition was not presented to the trial court. The matter is not so presented that this court would be justified in reversing the judgment of the trial court upon this ground.

As ground for reversal of the judgment of the lower court, plaintiff in error presents the further proposition that the court erred in rendering judgment for the plaintiff for the reason that the action of plaintiff was barred by the statute of limitations. The statute of limitation in force at the time of the accrual of the right of action was section 7653 of the Compiled Laws of Oklahoma of 1909, which is identical with section 7419 of the Revised Laws of 1910, which went into effect during the progress of the proceedings. This statute reads as follows, to wit:

"No action shall be commenced by the holder of the tax deed or the former owner or owners of land [or] by any person claiming under him or them to recover possession

of the land which has been sold and conveyed by deed for nonpayment of taxes, or to avoid such deed, unless such action shall be commenced within one year after the recording of such deed; and in case of action to avoid the deed not until all taxes, interest and penalties, costs and expenses shall be paid or tendered by the party commencing such action."

Plaintiff in error contends that the deed went to record on September 9, 1912; that while the first suit was filed April 3, 1913, and within the year, it was only against Davenport and Morton, the defendant Hutchison not having been made a party thereto until February 7, 1914, more than a year after the recording of the tax deed; that the second suit was not commenced till October 20, 1914; and that, by reason of these facts, the cause of action by the former owner as against plaintiff in error, for possession and to avoid the tax deed, was barred by the statute of limitation above quoted.

Independently of the effect of the first suit as tolling the statute, we are confronted with this situation: The 60 acres of land in controversy was a part of the allotment of a living citizen of the Creek Nation of Indians, and owned by such allottee at the time of all of the tax proceedings, except the issuance of the deed. Such allottee was a minor at the time of all of such proceedings, except the issuance of the deed. Forty acres of the land was his Indian homestead allotment. In arriving at the effect of the statute of limitation, as related to these proceedings, these facts must necessarily be considered. In a consideration thereof, two propositions are involved, viz.: (1) The effect of the tax exemptions imposed upon the homestead allotment by the Indian treaties and acts of Congress; and (2) the relations of the tax deed, the statute of limitation, and the statutory right of the minor within one year after majority to redeem from the tax sale all of the lands.

Under the laws and treaties of the United States, pertaining to the affairs and lands of the Creek Nation of Indians, at the time of the tax proceedings in question, including the assessment, levy, sale, and issuance of certificates, the homestead 40 acres of this land was exempt from taxation. English v. Richardson, 224 U. S. 680, 32 Sup. Ct. 571, 56 L. Ed. 949; Choate v. Trapp, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941.

This exemption is not subject to violation by the state tax laws or administrative officials, directly or indirectly. So far as the state taxing power is concerned, the

exempt lands do not exist; and so far as the exempt lands are concerned, the taxing power does not exist. The land is as effectively without the pale of the tax laws and their administration as if they were located in another state. All proceedings of the taxing power, having as their effect a violation of this exemption, are without jurisdiction and void, and the tax deed based upon such proceedings is void. Cooley on Taxation, 171 and 1012 (3d Ed.); Quivey v. Lawrence, 1 Idaho, 313; Mackall v. Canal Co., 24 L. Ed. 161, 94 U. S. 308; McGeisey v. Board of Com'rs, 45 Okla. 10, 144 Pac. 614.

The effect of this principle, in the instant case, is that the tax proceedings, upon which the tax deed of plaintiff in error is based, and upon which the statute of limitations must operate, if at all, are a nullity, as much so as if they had not existed. The tax deed, issued one day after the allottee had disposed of the land and it had become taxable, was based upon this nullity. In law, in the last analysis, the land was not sold for taxes; and, so far as it affects the homestead allotment, the deed, regardless of the presumptions incident to it, came into existence, not simply with its vitality impaired by prenatal irregularity, but with statutory vital substance wholly absent. Our tax statute of limitation does not operate upon a deed except when it is based upon sale. Let us notice the exact wording of the statute:

"No action shall be commenced by the holder of the tax deed or the former owner or owners of land [or] by any person claiming under him or them to recover possession of the land **which has been sold and conveyed** by deed for non-payment of taxes, or to avoid such deed, unless such action shall be commenced within one year after the recording of such deed. * * *" (Emphasis ours.) .

The statute does not bar an action simply upon lands upon which a tax deed has been issued and recorded, but the bar, in its specific terms, stands only in the way of actions to recover land which has been sold and conveyed by deed for nonpayment of taxes. It contemplates three things, viz., a sale, a conveyance, and the existence of a tax. It further proceeds to lay down the requirement, as a prerequisite to the maintenance of the suit, that the plaintiff shall pay or tender to the tax deed holder all taxes, penalties, etc.; thus, clearly, not assuming that the deed could have come within the terms of the statute if not based upon a legally existing tax.

It is our conclusion that, as to the homestead, the recording of the tax deed did not operate to put in operation the statute of limitation. This conclusion is supported by the following authorities, viz.: Mackall v. Canal Co., 94 U. S. 308, 24 L. Ed. 161 (supra) ; Florida Sav. Bank v. Brittain, 20 Fla. 507; Early v. Whittingham, 43 Iowa, 162; State Finance Co. v. Beck, 15 N. D. 374, 109 N. W. 357; Martin v. White, 53 Or. 319, 100 Pac. 290; Chicago R. Co. v. Arnold, 114 Wis. 434, 90 N. W. 434; 37 Cyc. 1508.

This conclusion is applicable to the relation of the statute of limitation and the tax deed only in so far as the homestead land is concerned, and not as to the 20 acres of surplus allotment.

The jurisdiction of the taxing power properly extended to the surplus land, upon which there was no federal restriction; and the recording of the tax deed, if it was issued in accordance with the laws of the state, put into operation the statute of limitation as to that part of the land involved. The invalidity of the tax proceedings and deed, as not being in conformity to the formal requirements of the statutes of the state, is not raised by defendant in error, but it is expressly agreed between the parties in their agreed statement of the facts that such proceedings were duly had, except the issuance of the deed, and it is expressly agreed that the deed was issued. The deed being agreed to have been issued, we are bound by the statutes, in the absence of proof to the contrary, to presume that the tax officials performed their duties under the law and that the deed contained the statutory terms and was properly issued.

According to the agreed statement of facts, the homestead and surplus tracts were assessed and sold separately, and separate certificates of sale were issued and assigned therefor. The consideration of the tax deed thus was not indivisible, and the conveying quality of the deed was not vitiated by an inseparable joinder with the attempted illegal conveyance of the homestead. We do not consider or determine the effect of the statutory right of an infant to redeem within a year after majority as a possible toll of the statute during the period of exemption, for the reason that there is no proof that the allottee was not of age more than a year prior to the date of the tax deed, August 2, 1912. The enrollment record showed him to have been of age during August, 1912, but was not proof that he was not of age upon August 1, 1911, a year before the issuance of the tax deed. The burden of tolling the statute by this proof was upon the plaintiff, in the face of the statutory presumptions incident to the tax deed.

Defendant in error urges that, the first suit having been brought within a year from the recording of the tax deed, his second suit is properly brought, having been begun within a year of the failure of the first suit. The first suit was brought against the grantee in the tax deed, who had long since conveyed without reservation all of his rights to plaintiff in error, and against one J. R. Morton, whom the record does not disclose to have had any interest whatever in the land. Hutchison, the plaintiff in error, was not made a party to the first suit until long after the expiration of a year from the date of the recording of the tax deed, although his deed from the tax deed grantee had been on record for over four months prior to the beginning of the suit. Hutchison was a necessary party, for he owned the record tax title. No one was authorized to waive the limitation for him. A waiver could not be indirectly forced upon him by suing some one who was not interested with him in maintaining the limitation, and thus would fail to plead it. If this could be done, the statute would be without effect, for it might always be done. This principle is laid down by Cyc. (25 Cyc. 1302), where will be found a long list of authorities' supporting this view. We conclude that, as to the homestead allotment, the action was not barred by the statute of limitation, and that it was barred as to the surplus 20 acres involved.

Plaintiff in error contends that the disposition of the first case brought by plaintiff below was a final disposition of the case upon its merits, and that the lower court erred in not sustaining his plea of res adjudicata. With this contention we cannot agree. In the former suit the court, after sustaining the demurrer of the defendant to the evidence of plaintiff, without entering a judgment upon the merits, permitted plaintiff to dismiss his cause without prejudice. In the case of Schafer v. Weaver & Bill, 20 Kan. 294, upon a presentation of this question, the Supreme Court of Kansas said:

"Where a demurrer to evidence is submitted to the court, the submission is only conditionally final. It is final upon the condition that the court shall sustain the demurrer, and shall not in its discretion choose to reopen the case for the admission of other evidence, or for the dismissal of the action without prejudice. * * * If, how-

ever, the court overrule the demurrer, or if the court in its discretion shall reopen the case for the admission of evidence, or for the dismissal of the action without prejudice, then the submission is not final, or at least the action of the court thereon is not final. According to the decisions above cited, a party against whom a demurrer to evidence has been sustained cannot, as a matter of right, claim to have the case reopened for the introduction of additional evidence, or for the dismissal of the action without prejudice. So far as his rights are concerned, the decision is final; but still he may appeal to the discretion of the court. It would be a bad law that would so tie the hands of a trial court that it could not in any case reopen the case after sustaining a demurrer to evidence."

The trial procedure statute of Kansas is similar to that of this state, and we think the reasoning of the above case by the Kansas court very apt. It cannot be successfully contended that the trial court did not have the discretion to permit the case to be reopened after sustaining the demurrer. The action of the court in this case, in permitting the dismissal without prejudice, in effect was a setting aside of the order sustaining the demurrer and a reopening of the case. Defendant did not complain at the time, and took no exception to the action of the court. We do not think there is any error in this assignment.

Where a case is tried on an agreed statement of facts, there being nothing to weigh as to the credibility of the witnesses, this court will determine the law on the facts agreed to, and render or direct the rendition of such judgment as the trial court should have rendered. Consolidated Steel & Wire Co. v. Burnham, 8 Okla. 514, 58 Pac. 654.

From the conclusions hereinabove reached, it follows that as to the homestead 40 acres, being the southeast quarter of the northwest quarter of section 8, township 13 north, range 10 east, of the Indian meridian, the judgment of the lower court should be affirmed; and that as to the surplus 20 acres, being the east half of the southwest quarter of the northwest quarter of said section, township, and range, the judgment of the lower court should be reversed, with the direction to the lower court to set aside its judgment as to this 20 acres, and enter judgment for the defendant Frank P. Hutchison therefor, quieting title to such surplus 20 acres in the said Frank P. Hutchison, and for cancellation as prayed by said defendant as to the said surplus 20 acres; and it is so ordered, and that the costs be equally divided between the plaintiff in error and defendant in error.

By the Court: It is so ordered.