## WILLIAMS v. McCANTS et al.

No. 11721—Opinion Filed Feb. 12, 1924.

Rehearing Denied Nov. 25, 1924.

**1. Trial—Refusal of Instruction on Weight of Evidence.**

A requested instruction which points out one item of the testimony and directs the jury that if it finds such item to be shown by the evidence it shall be given a certain effect, while there is other evidence from which the jury might reach a different conclusion but for such instruction, the refusal of such requested instruction is proper as being upon the weight of the evidence and an invasion of the province of the jury.

**2. Indians—Evidence of Age — Enrollment Records.**

The enrollment records prepared by the Dawes Commission pursuant to acts of Congress, where they show date of application for enrollment and the age in years of the applicant on that date, are conclusive evidence that at the date of such enrollment the applicant had completed the cycle of the age shown by such record.

**3. Same—Exact Date of Birth—When not Material.**

In such a case the exact date of birth is not material if the date of enrollment and age in years of applicant at that time are shown by the enrollment records, and the transaction involved occurred on a date subsequent to the attainment of majority of the allottee as shown thereby, where the only basis of the action is minority of the allottee at the time of the transaction involved.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Carter County; Frank Mathews, Assigned Judge.

Action by Ruby Williams, nee McGee, against J. F. McCants, Jno. A. Kelly, and Dickinson-Reed-Randerson Company, a corporation, to cancel a certain deed. Decree for defendants, and plaintiff brings error. Affirmed.

Ruby Williams is an enrolled member of the Chickasaw Tribe or Nation of Indians of one-eighth blood, and on October 31, 1913, executed and delivered to the defendant J. F. McCants a certain warranty deed, conveying to him certain lands described in plaintiff's petition and lying in section eighteen (18), township three (3) south, range one (1) west in Carter county, Okla. McCants and wife mortgaged this land to Dickinson-Reed-Randerson Company, and Jno. A. Kelly thereafter became the assignee of such mortgage. Thereafter and on August 1, 1919, plaintiff filed her petition in the district court of Carter county, Okla., against the defendants, alleging, in substance, that at the date of the execution of said deed she was a minor and incapable of conveying said land, and alleging fraud and misrepresentation in the procurement of said deed, and asking that said deed and the mortgage and the assignment of said mortgage be canceled and set aside, and for restitution of the premises conveyed. For a second cause of action plaintiff alleged that since the execution of the deed in question the lands therein described had become valuable as oil property and that a lease thereon for oil and gas purposes was of a reasonable value of $5,000, but that she was prevented from executing such lease by reason of the deed and mortgage above mentioned, and prayed for judgment for the sum of $5,000 as damages for clouding her title and preventing the leasing of such lands for oil and gas purposes, and for the sum of $3,000, as the reasonable rental value of said lands for the six years preceding.

Defendants filed separate answers to the petition of the plaintiff, the defendant McCants, in substance, denying any fraud or misrepresentation in the procurement of said deed and denying the minority and incapacity of plaintiff to execute the same, and asked that his title be quieted. Jno. A. Kelly and Dickinson-Reed-Randerson Company by their separate answers denied generally the allegations of plaintiff's petition and pleaded good faith and want of notice of any defect in title at the time of the execution of the mortgage and of the assignment thereof.

Plaintiff filed replies to the separate answers of the defendant's said replies in effect being general denials.

The cause came on for trial March 12, 1920, and at that time plaintiff dismissed her second cause of action and also dismissed her first cause of action insofar as the allegations of fraud and misrepresentation were concerned and relied thereafter solely upon her minority at the date of the execution of the deed in question.

A jury was impaneled, but it appears from the record that both plaintiff and defendants, together with the trial court, treated the case as one in equity, and the jury returned only a special verdict in response to a special interrogatory submitted by the court as to the age of plaintiff at the date of the execution of the deed in question. The trial court adopted the finding of the jury upon this one question of fact and rendered judgment in favor of the defendants and against the plaintiff, dismissing her action. After unsuccessful motion for new trial the case was filed in this court by petition in error and case-made. Other facts necessary to a determination of the matters involved upon this appeal will be stated in the opinion.

R. L. Disney, for plaintiff in error.

Cruce & Potter, for defendants in error.

Opinion by LOGSDON, C. Numerous errors are assigned in the petition in error, but they are all comprehended by the two propositions presented and argued in plaintiff's brief, which are as follows:

(1) "If a law case, this should be reversed for failure to give requested instructions.

(2) "If one of equitable cognizance, this case should be reversed because the judgment is not sustained by the evidence and is against the clear weight of the evidence, and judgment rendered accordingly."

As to the first proposition, it is not deemed necessary to do more than pass upon the correctness of the requested instruction which was refused by the court. Plaintiff states in her brief at page nine that requested instruction No. 2 is "copied almost verbatim from the case of Gilcrease v. McCullough, 63 Okla. 24, 162 Pac. 178." In that case the only evidence offered on the question of age was the census card. In the lower right hand corner it bore the notation "June 9, 99". The court held, as it likewise did in Jackson v. McGilbray, 46 Okla. 208, 148 Pac. 703, that this notation was without probative force to establish the date of enrollment. In the case at bar the entire enrollment record of plaintiff was introduced, and it was all before the jury

for its consideration. Under this condition of the record plaintiff requested the following instruction, which was refused:

"Gentlemen of the jury, you are instructed, that a portion of the evidence in this cause consists of the enrollment record as to the age of Ruby McGee, plaintiff, consisting of several pages or sheets referring to the age of the plaintiff; and in this connection you are instructed that any date found in the lower right hand corner of any of said sheets is not to be taken or considered by you as the date from which to compute the age of the plaintiff found upon any such sheet or page, unless you further find that said date is given as the date of the application for enrollment; and you are further instructed that in case you should find any such date given as the date of the application for enrollment, you may then regard and consider such date as the date from which to compute the age found upon such sheet as to Ruby McGee; you are instructed, however, not to regard such date of application for enrollment as the birthday of Ruby McGee (unless you should so find from other evidence) but only as showing that on said date Ruby McGee had reached or passed the age shown upon the same sheet or page with such date of enrollment, but had not on said date reached or passed her next birthday"

By this instruction the jury was prohibited from considering the entire enrollment record in reaching a conclusion as to the date of plaintiff's enrollment, but was limited to card D 51, which bore in its lower right hand corner the words, "Date of application for enrollment, Sept. 21, '98," and card 572, which bore in its lower right hand corner the date, "9-20-98", and in effect it was directed to accept card D 51 as her correct enrollment date. In addition to these two cards, the enrollment record contains census card No. 1846, two memoranda, transcribed testimony, and the approval roll as to plaintiff. Clearly this instruction was upon the weight of the evidence and invaded the province of the jury to weigh the evidence and determine the facts. Its refusal was not error.

The second proposition brings in question the entire record of the trial and the sufficiency of the evidence to support the judgment. All parties, including the trial court, appear to have treated the action as one in equity and the verdict of the jury as merely advisory. No general verdict was returned, but only a special verdict as to plaintiff's age at the date of the execution and delivery of the deed in question. Preliminary to the consideration of this propo-

sition another matter complained of by plaintiff under the first proposition may be disposed of. It is contended that plaintiff's rights were prejudiced by the refusal of the trial court to submit to the jury special interrogatory No. 1 requested by plaintiff, which reads:

"What was the age of Ruby McGee at the date of the application for her enrollment upon the rolls of the Five Civilized Tribes?"

Special interrogatory No. 2, requested by plaintiff, was submitted to and answered by the jury. It reads:

"What was her age at the time of the execution of the deed in question to J. F. McCants?"

The verdict of the jury in equity cases being merely advisory, and it being the duty of the court to weigh the evidence and to adopt or reject the findings of the jury according to the equities of the case and the rights of the parties, error is not assignable upon the exercise of discretion by the court as to what questions of fact germane to the issues shall be submitted to the jury. Prentice v. Freeman, 76 Okla. 260, 185 Pac. 87.

Upon the trial much testimony, both oral and by deposition, in addition to the enrollment record, was introduced to establish the age of the plaintiff at the date of enrollment and at the date of the execution and delivery of the deed. In the view taken of this case by this court none of this testimony except the enrollment record is relevant or pertinent to the inquiry here, if the fact in dispute is disclosed by the enrollment record itself. In other words, if the enrollment record discloses the date of application for enrollment and the age in years of plaintiff at that time, even though date of birth is not shown, it is conclusive that at date of application for enrollment she had completed the cycle of the year shown in the record. Jordan v. Jordan, 62 Okla. 171, 162 Pac. 758; Jackson v. Lair, 48 Okla. 269, 150 Pac. 162; Hart v. West, 62 Okla. 71, 161 Pac. 534; Hefner v. Harmon, 60 Okla. 153, 159 Pac. 650; Hutchinson v. Brown, 66 Okla. 250, 167 Pac. 624.

There are two possible dates shown by the enrollment record on which the application for enrollment may have been made. The first is shown by the transcribed testimony of Joe Jackson, grandfather of plaintiff, given under oath before A. S. McKennon, a member of the Dawes Commission, at Ardmore, Okla., September 20, 1898, and the contemporary freedman roll, field card No. 572, together with the pencil memorandum containing the names and ages of Dora McGee and all of her children then born, said names and ages being identical with the testimony of Joe Jackson, and the memorandum bearing the notation "572", being the number of said freedman roll field card. The second is shown by Chickasaw roll, field card D 51, in the lower right hand corner of which is the notation, "Date of application for enrollment, Sept. 21, 1898." One or the other of these two dates is the date of application for enrollment of plaintiff. Which of the two is the correct date is only made material in this case by the fact that on field card 572 the age of plaintiff is given as 3 years, while on field card D. 51 it is given as 1 1-2 years. If she was 3 years old on September 20, 1898, then she had passed her majority on October 31, 1913 when the deed in question was executed, while if her age on September 21, 1898, was only 1 1-2 years she was a minor on October 31, 1913. Plaintiff's contention is that field card D 51 states her correct age at date of application for enrollment. If this question can be reasonably determined from an inspection of the enrollment record alone then its disclosure is conclusive, and the deposition and oral testimony introduced on the trial become wholly immaterial.

Mr. Mills, in his work on Lands of the Five Civilized Tribes, sec. 285, says:

"The Commission carried a doubtful card upon which was entered the record of applicants whose rights to enrollment had not been determined."

It is also a well known fact that each applicant for enrollment was assigned a number, designated, "Dawes Roll No.," a different series of numbers being used for Indians by blood, intermarried, new born, and freedmen. On freedman roll field card No. 572, Dora McGee and each of her children was given a Dawes roll number. Dora McGee was a negro, and therefore entitled to enrollment as a freedman, if at all. Her husband was an Indian. This made it questionable as to which roll should show the children. Chickasaw roll, field card D 51, contains the names of Dora's children as given to the Dawes Commission by Joe Jackson, their grandfather, September 20, 1898, but neither child was given a Dawes roll number on that card. Evidently this was one of the doubtful cards described by Mr. Mills, supra. Annie, the eldest of these children, was conceived out of wedlock and born within three months after her mother's marriage. Field card D 51 bears these indorsements: "No. 1 (which was Annie)

Refused, Feb. 18, 1907." "Nos. 2 to 7 inc. (being all others) Granted Feb. 18, 1907. Transferred to Chick Card No. 1846." "Copy of decision forwarded applicant Feb. 18, 1907." Also indorsements showing copies of decision forwarded to attorneys for applicants and attorneys for Choctaw and Chickasaw Nations on same date. Then this indorsement: "Record forwarded department Feb. 18, 1907." What record? Evidently the record of the commission's action in denying transfer to Annie and granting it as to the others. Because under date of March 4, 1907, appears this indorsement: "Action approved by Secretary of Interior." What action? Evidently not the enrollment of this family, because their enrollment had been approved April 10, 1903, as shown by freedman roll, field card 572. The action approved must have been the decision of February 18, 1907. Lines are drawn through each of the seven names on this card. These indorsements and these lines through the names find reasonable explanation by an examination of freedmen roll, field card No. 572. On this card two additional children are enrolled, viz: Oliver, enrolled March 31, 1900, at 5 months of age and, Elsie, enrolled May 3, 1902, at 3 months of age. On this card lines are drawn through all of the names except that of Dora, the negro mother, and Annie, the daughter conceived out of wedlock, and these indorsements appear: "Nos. 3 to 10 inclusive transferred to Chickasaw roll by blood under departmental authority of March 4, 1907. "See Chickasaw card No. 1846 as to Nos. 3 to 10, inclusive." These new born children were never entered on field card D 51. Jesse McGee, the father, testified on the trial that he was sick in bed when the enrollment hearings started at Ardmore and that Joe Jackson had them enrolled. A few days thereafter witness went to Ardmore. Why? To have them enrolled? That had already been done. He was an Indian. His children had been enrolled as freedmen. It is reasonable that his purpose was to have them transferred to the roll of Indians by blood. Someone made such an application, because this is clearly shown by the indorsement on card D 51. All of these facts and circumstances seem conclusively to show that field card D 51 was not intended as a record of the enrollment of this family, but was a doubtful card made out pending determination of the right of those shown thereon to transfer to the roll of Indians by blood, and therefore correct data as to Dawes roll number, age and date of application was not considered essential. Again, freedmen roll, field card No. 572, bears this indorsement: "Enroll-

ment of Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 hereon approved by the Secretary of Interior April 10, 1903." This indorsement, or anything similar, does not appear on field card D 51.

This enrollment record, therefore, contains no intrinsic evidence to sustain plaintiff's contention that card D 51 is the original enrollment card from which the final approved roll of this family was made, but does show that the final approved roll of this family could not be based thereon because two of the children entitled to Indian blood enrollment were never entered on card D 51.

On the other hand, freedmen roll, field card No. 572, is reasonably shown by the enrollment record to be the original enrollment card from which the final approved rolls of this family were made, thus: 1. It is shown that the grandfather, Joe Jackson, made application for the enrollment of his daughter, Dora, and her seven children at Ardmore September 20, 1898. 2. That his testimony as to names and ages was taken and transcribed and that such transcribed testimony bore a notation referring such testimony to Chickasaw freedmen card 572. 3. That card 572 bears in the lower right hand corner the figures "9-20-98," corresponding with the date of Joe Jackson's application and testimony. 4. That each applicant placed on this card was given a Dawes roll number. 5. That two children thereafter born to Dora were entered on this card and date of their enrollment shown. 6. That when the enrollment of this family was approved by the Secretary of the Interior his approval was indorsed on this card and not on D 51. 7. That when the calculation of ages of members of this family was made for entry on the final approved rolls, the results of such calculation were made in dim figures following the names on card 572, and not on card D 51, and that these dim figures appear on the final approved roll as the respective ages of these children.

From all that has been said it is concluded that the enrollment record in this case shows that plaintiff was enrolled September 20, 1898, and that she was then three years of age. This would make her 18 years of age on September 20, 1913, and that this was her age on that date is conclusively presumed. (See authorities cited supra.) Since the conveyance in question was executed October 31, thereafter, the exact date of her birth is immaterial.

Upon the trial plaintiff introduced the deposition of Commissioner Tams Bixby in

an effort to establish that card D 51 was the original enrollment card of plaintiff and that her age of one and one-half years shown thereon was her correct age at date of enrollment. His testimony was necessarily inconclusive and indefinite because of the lapse of time and the almost innumerable cases of a similar nature upon which he acted. He had no independent recollection of the transactions involved, and his testimony falls far short of contradicting and refuting the intrinsic evidence of the enrollment record itself. Plaintiff had the burden of proof under her allegation of minority, and having failed to sustain that burden, she is not entitled to recover. Hutchinson v. Brown, 66 Okla., sp. cit. 253, 167 Pac. 624; Freeman v. First Nat. Bank of Boynton, 44 Okla. 146, 143 Pac. 1165; Rice v. Ruble, 39 Okla. 51, 134 Pac. 49.

The decree of the trial court should be in all things affirmed.

By the Court: It is so ordered.